JOY COSSICH LOBRANO, Judge.
| jPlaintiff, Mary Lou McCall, appeals several judgments of the trial court rendered in her lawsuit against defendants, Focus Worldwide Television Network, Inc. and Charlene Vance.
In 1988, Ms. McCall, a television journalist in New Orleans, Louisiana, began working as a volunteer with Focus Worldwide Television Network, Inc.[1] (“Focus”), a Catholic television station and video production company founded by the late Archbishop Philip Hannan.[2] Prior to her compensated employment, Ms. McCall volunteered her services and worked with Archbishop Hannan, starring in and producing faith-based documentaries, and ultimately hosting a faith-based television show, called “FOCUS,” which dealt with topics relevant to the Roman Catholic community. On December 31, 1993, Ms. McCall entered into a formal 12employment contract with WLAE,[3] a television station, and Focus Syndicate, Inc.,[4] signed by her and Archbishop Hannan, which stated as follows:
I, the undersigned (Archbishop Philip M. Hannan) agree to have Mary Lou McCall (Mrs. John Young) paid a salary of $60,000 per year for her services as producer of the FOCUS program broadcast over Station WLAE, Channel 32 and the documentaries to be made in accord with the schedule which we have maintained in previous years. Mary Lou McCall will be required to work three days a week (currently the first three work days) and she will be consulted about the time and place for making the documentaries. She will not be paid an additional amount for the documentaries. In addition to her salary an insurance policy with an annual premium of $10,000 will be funded in her name and on her behalf.
The payment of the salary of $60,000 will be as follows: she will be paid $30,000 a year by WLAE with payments made every two weeks; she will be paid another $30,000 per year by Archbishop Hannan in his capacity as President of WLAE and President of Focus Syndicate, Inc. with payments every two weeks amounting to $1,153.85. The provisions of the insurance policy are contained in a separate document attached to this agreement.
This agreement goes into effect on January 1, 1994 with a payment of $1,153.85.
This agreement can be terminated by either party with two month’s notice.
While the nature of the $10,000 annual premium identified in the first paragraph of the contract is disputed by the parties, *879 the record establishes that Focus paid a $10,000 premium annually for a life insurance policy in Ms. McCall’s name[5] from 1994 until 1999, when Ms. McCall decided to surrender the policy and | stake receipt of its cash value according to the terms of the policy.[6] According to Ms. McCall, when she decided to take the cash value of the insurance policy, Archbishop Hannan verbally agreed to continue paying $10,000 per year directly to her for her retirement. Focus made one $10,000 payment to her directly at the end of 1999, but she never received another $10,000 annual payment after that time.
According to Ms. McCall, on March 20, 2003, the Board of Directors of Focus passed two resolutions, which are both at issue in this lawsuit. The resolutions are signed only by Ms. McCall and Archbishop Hannan. One of the purported resolutions includes the following paragraph:
Mary Lou McCall is a member of the corporate membership as well as a member of the board of directors of which she is Vice President. Thus she is in a position to continue in her present capacity as the Director of programming of Focus for as long as she desires.
The other purported resolution involves an agreement to sell and transfer ownership of equipment owned by Focus to Ms. McCall. Preceding the list of equipment to be transferred to Ms. McCall is the following language:
In consideration for the services you’ve rendered since 1988 and for the amount of one dollar and other valuable consideration, I[,] Philip M. Hannan [,] sell and transfer to you, Mary Lou McCall [,] the following and attached equipment free and clear of any liens and encumbrances of any type or nature.
I ¿Following the list of equipment subject to this purported resolution is the following language:
Notwithstanding the transfer of title and ownership of the above listed equipment to Mary Lou McCall, Mary Lou McCall hereby agrees to continue to produce programs for Focus under the same terms and conditions presently applicable, until such time as the Focus mission ceases to exist or until such time as mutually agreed upon.
Archbishop Hannan signed this document as President of Focus. The document was also signed by Ms. McCall and two witnesses.
On March 21, 2003, another Focus resolution purportedly removed Mr. Charles Read as a member of Focus, according to Ms. McCall. That resolution, which is also at issue in this lawsuit, was signed by Ms. McCall and Archbishop Hannan, and stated as follows:
Be it resolved that by a majority vote, Rusty Reed [sic] has been removed as an officer of the corporation of Focus Worldwide Network beginning on this day Friday March 21, 2003.
(Emphasis added).
Focus argues that this resolution did not remove Mr. Read as a member of Focus, as Ms. McCall contends. Ms. McCall argues that the use of the word “officer” instead of “member” was merely a typographical error, and that this resolution *880 removed Mr. Read as a member of Focus. Ms. McCall relies on this resolution to support her position that Mr. Read should not have been allowed to vote at a Board of Directors’ meeting held on May 8, 2007, which effectively removed Ms. McCall as a member, director and officer of Focus.
|sBy letter signed by Archbishop Han-nan and dated May 2, 2007, Ms. McCall received notice that her employment and association with Focus was being terminated, effective immediately. At a Focus membership meeting held several days later, on May 8, 2007, a new slate of members, directors and officers was elected, and the slate did not include Ms. McCall’s name.
Ms. McCall filed suit in federal court on September 6, 2007 against Focus, Archbishop Hannan and Charlene Vance (an employee and director of Focus) for improperly terminating her employment with Focus. The lawsuit filed in federal court was dismissed on jurisdictional grounds on April 20, 2009.[7] On September 17, 2009, Ms. McCall filed the instant lawsuit in Civil District Court for Orleans Parish, naming Focus and Ms. Vance as defendants.
Ms. McCall listed five counts in her petition. Those included:
Count 1 — Breach of Contract against Focus;
Count 2 — Defamation against Focus;
Count 3 — Intentional Interference with Contract against Ms. Vance;
Count 4 — Revendieatory Action against Focus; and
Count 5 — Demand for Damages, Penalties and Royalties for Retail Sales of Videos against Focus.
In Count 1, Ms. McCall alleged that Focus breached the contract with her by failing to pay $10,000 per year in premiums for retirement insurance for her benefit. She also claimed that Focus breached two agreements of March 20, 2003, one which allegedly guaranteed her tenured employment until she desired to leave 1 fiFocus, and the other which agreed to transfer certain equipment, videotapes and other movable property to her in consideration for her prior work at Focus and other valuable consideration.
In Count 2, Ms. McCall alleged that the statements contained in her termination letter were false and calculated to cause harm to her. She also alleged that the termination letter was sent to her through a courier, without any cover concealing the letter.
In Count 3, Ms. McCall alleged that Ms. Vance knew of the contract guaranteeing Ms. McCall lifetime employment with Focus, and intentionally induced Focus to breach the contract by making untrue and derogatory comments about Ms. McCall to Archbishop Hannan, and by acting in an unfair and unethical manner to remove Ms. McCall from her position at Focus.
In Count 4, Ms. McCall alleged that she is the lawful owner of all equipment, videotapes and other movable property set forth in a March 20, 2003 purported contract between her and Focus. She further alleged that since the date of her termination, Focus has wrongfully possessed these items and has refused to surrender them to Ms. McCall, despite her formal demand on Focus.
In Count 5, Ms. McCall alleged that she is entitled to damages, penalties and royalties for retail sales of videotapes resulting *881 from Focus’ failure to surrender the items to which she alleged ownership in Count 4.
l7Ms. McCall asked that the trial court award her all general, equitable and legal relief to which she is entitled, including but not limited to all damages, attorney’s fees, costs, and legal and judicial interest.
On October 15, 2009, Focus filed a re-conventional demand against Ms. McCall. In this demand, Focus alleged that the purported corporate resolutions of March 20, 2003 were prepared by Ms. McCall in bad faith, that no meeting of the Focus Board of Directors was held as stated in the purported resolutions, and no motions were made, discussed, voted upon or passed by the Board of Directors relating to these purported resolutions. Focus further alleged that Ms. McCall’s attempt to improperly secure lifetime employment status and to have almost all of the movable assets of Focus transferred to her for no consideration was a breach of her fiduciary duty to the corporation and an attempt to improperly benefit and/or enrich herself at the expense of the corporation. Focus asked that the trial court award it attorney’s fees, costs and judicial interest from date of judicial demand and all other general and equitable relief that the court deemed appropriate.
On November 30, 2009, Focus and Ms. Vance filed declinatory exceptions of insufficiency of citation and service of process and improper venue, and peremptory exceptions of no cause of action, prescription and res judicata. The exceptions of insufficiency of citation and service of process, improper venue and res judicata are not at issue in this appeal. In their memorandum in support of the exceptions of no cause of action and prescription, Focus and Ms. Vance argued that Ms. McCall’s petition does not state a valid cause of action because lifetime | ¿¡employment contracts are against public policy in Louisiana, citing La. C.C. articles 2746 and 2747. Focus and Ms. Vance further argued that because Ms. McCall cannot have a cause of action based on a lifetime employment contract, she cannot state a claim for intentional interference with such a contract because she cannot establish the first element of such a claim, which is the existence of a contract or a legally protected interest between the plaintiff and the corporation. See 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 234 (La.1989).
As to the exception of prescription, Focus and Ms. Vance argued that the tort claims asserted by Ms. McCall are subject to a one-year prescriptive period pursuant to La. C.C. article 3492, and her employment claims are subject to a three-year prescription period pursuant to La. C.C. article 3494. See Fishbein v. State ex rel. Louisiana State University Health Sciences Center, 04-2482 (La.4/12/05), 898 So.2d 1260. Focus and Ms. Vance argued that Ms. McCall’s claims are prescribed on their face.
In her memorandum in opposition to the exceptions, Ms. McCall argued that her employment contract at issue is not a lifetime employment contract, but rather is an agreement that provided her with a term of employment — the term being the period during which she desired to remain at the station. She further argued that the agreement did not violate public policy because permanent employment is allowed when it is supported by some special consideration given by the employee over and above the rendering of services. She claimed that this exception is applicable in her case. Ms. McCall also argued that her case is not prescribed ]sbecause the filing of her federal action, which was dismissed on jurisdictional grounds, interrupted pre *882 scription, citing La. C.C article 3462.[8] She also argued that her claim regarding the annual $10,000 payment, which she alleged is for her retirement, is subject to a ten-year prescriptive period pursuant to La. C.C. article 3499.
On December 23, 2010, Ms. Vance filed a motion for summary judgment on the issues of intentional interference with a contract and prescription. In support of her motion, she filed a memorandum, a statement of uncontested material facts, affidavits of Archbishop Hannan, Noel Allen (Ms. McCall’s husband at the time of the 2009 affidavit), and Rev. Monsignor Christopher H. Nalty, J.C.L. She also filed the employment contract signed by Archbishop Hannan and Ms. McCall on December 31, 1993, excerpts from Ms. McCall’s deposition, the purported March 20, 2003 resolution of the Focus Board of Directors authorizing the employment of Ms. McCall “for as long as she desires,” and the May 2, 2007 letter from Archbishop Hannan terminating Ms. McCall’s employment with Focus.
On January 12, 2011, Focus filed a motion for summary judgment against Ms. McCall on the issues of: 1) lifetime employment or anything other than “at will” employment; 2) termination for cause; 3) prescription of all employment claims greater than three years; 4) defamation against Focus; 5) breach of fiduciary duty as it relates to purported lifetime employment and divestiture of most of the 1 inmovable assets of Focus; and 6) ultra vires acts of Focus. In support of this motion, Focus filed a memorandum, a statement of uncontested material facts, the two purported March 20, 2003 resolutions at issue, excerpts of the depositions of Archbishop Hannan, Ms. McCall, and Mark Coudrain, the deposition of June Harper, the employment contract signed by Archbishop Hannan and Ms. McCall on December 31, 1993, the July 14, 1999 Focus Articles of Incorporation, the May 2, 2007 letter of termination, and affidavits of Ms. Vance, Philip Brooks, Archbishop Hannan, Charles F. Read, Jr., Rev. Monsignor Christopher H. Nalty, J.C.L., and Noel Allen.
Although there is no indication in the record that the trial court issued rulings on the motions for summary judgment filed by Ms. Vance and Focus on December 23, 2010 and January 12, 2011, respectively, the trial court rendered judgments on the exceptions of no cause of action filed by these parties. On February 22, 2011, the trial court granted Ms. Vance’s exception of no cause of action, and dismissed Ms. McCall’s claims against her with prejudice. On February 24, 2011, the trial court granted the exception of no cause of action filed by Focus as to Ms. McCall’s claims of tenured or lifetime employment, and dismissed those claims with prejudice.
On February 24, 2011, Ms. McCall filed a motion for partial summary judgment or, alternatively, a motion for new trial. In her motion for partial summary judgment, Ms. McCall sought a ruling that there is no material fact at issue that her termination as Vice President and Secretary of Focus was not |nproperIy authorized or consistent with the procedures for termination set forth in the Focus Articles of Incorporation. Specifically, she alleged that the termination was carried out by *883 Focus by misrepresenting that a certain individual, Charles Read, was a member eligible to vote on Ms. McCall’s termination. As an alternative to her motion for partial summary judgment, Ms. McCall sought a new trial on the exception of no cause of action filed by Focus, arguing to the trial court that its ruling on the exception of no cause of action regarding lifetime employment should not include her allegation that she was improperly terminated as an officer of Focus.
In support of her motion for partial summary judgment or, alternatively, motion for new trial, Ms. McCall submitted a memorandum, a statement of uncontested material facts, her affidavit, a purported March 21, 2003 resolution of the Focus officers, removing Charles Read as an officer of the corporation, a notice of a special meeting of the Focus membership scheduled for May 8, 2007, excerpts of Archbishop Hannan’s deposition, the July 14, 1999 Focus Articles of Incorporation, an extract of minutes from a July 14, 1999 meeting of the Focus membership and Board of Directors, and excerpts of Ms. McCall’s deposition.
On March 1, 2011, Focus filed a cross-motion for summary judgment on the issues of Charles Read’s designation and continuity as a member of the corporate membership of Focus and the validity of the May 8, 2007 membership meeting, and an opposition to Ms. McCall’s motion for partial summary judgment. In support of its cross-motion for summary judgment, Focus submitted a statement of 112uncontested material facts, a response to Ms. McCall’s statement of uncontested material facts, affidavits of Mark Coudrain, Charles Read, Archbishop Hannan, Philip S. Brooks, Ms. Vance, excerpts from Ms. McCall’s deposition, and a Unanimous Consent Agreement[9] of the Focus members, dated April 29, 2002, appointing Mr. Read to membership in Focus.
On March 3, 2011, Ms. McCall filed an opposition to the motion for summary judgment filed by Focus on January 12, 2011, and also filed a response to the statement of uncontested material facts submitted by Focus. Attached to the opposition were excerpts from the depositions of Ms. McCall, Ms. Vance, and Archbishop Han-nan, and a ledger of Focus checks written to Ms. McCall.
Following a hearing on March 25, 2011, the trial court granted Focus’ exception of prescription, ruling that Ms. McCall’s claim regarding the $10,000 annual payment agreed to in the 1993 employment contract is subject to a three-year prescriptive period. On April 25, 2011, the trial court denied Ms. McCall’s motion for partial summary judgment, and granted the cross-motion for summary judgment filed by Focus, finding that Charles Read was a member of the Focus corporate membership from April 29, 2002 to present (date of judgment) and that the resolution purporting to remove Mr. Read as a member is invalid.[10]
The remaining issues before the court were heard at a trial on March 30-31, 2011. On December 13, 2011, the trial court rendered judgment dismissing all of [ isthe claims brought by Ms. McCall against Focus, including breach of contract, revendicatory claims for damages for royalties, ownership claims including Fo *884 cus equipment and video library, the intellectual property of Focus, claims to market Focus videotapes in her own name or for her own benefit and all other claims. The court also dismissed all claims brought by Focus against Ms. McCall in its reconven-tional demand.
Ms. McCall appeals all of the above judgments, and presents five assignments of error.[11] The trial court did not issue reasons for judgment for any of the judgments appealed from.
Ms. McCall first argues that the trial court erred in granting Focus’ exception of prescription as to Ms. McCall’s claim for alleged retirement benefits, and ruling that this claim is subject to the three-year prescriptive period of La. C.C. article 8494. Ms. McCall’s petition included the following allegations within her breach of contract claim:
24.
The contract between Ms. McCall and Focus, in which the corporation agreed to pay $10,000.00 per year in premiums for retirement insurance benefitting Ms. McCall, created a conventional obligation between Ms. McCall and Focus.
25.
The contract required Focus to remit $10,000.00 to a retirement insurance fund for the benefit of Ms. McCall.
26.
| ¶4Although Focus intermittently contributed to the plan in the obligated amount, Focus has contributed nothing to the plan since 1999.
27.
This breach of the obligation to provide insurance premiums has violated explicit terms and conditions of the conventional obligation and has deprived Ms. McCall of benefits to which she is rightfully entitled pursuant to the contract.
In its exception of prescription, Focus argued that the annual $10,000 payment at issue constituted a form of wages or compensation, and, therefore, Ms. McCall’s claim regarding this annual payment is subject to the three-year prescriptive period set forth in La. C.C. article 3494. In her opposition to this exception, Ms. McCall argued that this claim was one for retirement benefits, not wages, and is therefore subject to the ten-year prescriptive period for personal actions set forth in La. C.C. article 3499.
La. C.C. article 3494 states, in pertinent part:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board.
La. C.C. article 3499 states:
Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.
A trial court’s determination of a prescriptive period is subject to a manifest error/clearly wrong standard of review. Friel v. Louisiana Citizens Property Insurance Corporation, 11-1032, p. 3 (La.App. 4 Cir. 2/8/12), 85 So.3d 180, 182. The employment agreement signed by Ms. McCall and Archbishop Hannan on December 31,1993 includes the following sentence, which forms the basis for Ms. McCall’s claim for alleged retirement ben *885 efits: “In addition to her salary an insurance policy with an annual premium of $10,000 will be funded in her name and on her behalf.” It is undisputed that Focus funded an insurance policy in Ms. McCall’s name, with an annual premium of $10,000, until Ms. McCall decided to surrender the policy and take receipt of its cash value in late 1999. Focus then made one more $10,000 payment, directly to Ms. McCall, at the end of 1999. No further $10,000 annual payments were made by Focus to Ms. McCall.
By granting Focus’ exception of prescription, the trial court apparently agreed with Focus’ argument that the $10,000 annual payment specified in Ms. McCall’s employment contract was a form of compensation subject to the three-year prescriptive period of La. C.C. article 3494, and not a retirement benefit as alleged by Ms. McCall. The employment contract does not designate this annual payment as a retirement benefit. The policy funded in Ms. McCall’s name was a life insurance policy with a cash surrender value. After Ms. McCall exercised her right to take the cash value of the policy in 1999, the one additional $10,000 payment by Focus in late 1999 was made directly to her and without any restrictions as to its use. The fact that this payment was placed into a mutual fund for purposes of Ms. McCall’s retirement (according to the testimony of her ex-husband, John Young) is not sufficient to classify it as anything other than | ^compensation. Furthermore, when Ms. McCall exercised her right to take the cash value of the insurance policy and then accepted the $10,000 payment from Focus made directly to her at the end of 1999, these actions constituted a tacit modification of the portion of the 1993 contract relating to the funding of an insurance policy in Ms. McCall’s name.
We find no error in the trial court’s conclusion that the annual $10,000 payments were an additional form of compensation for services rendered. At most, these annual $10,000 payments could arguably be characterized as contributions to a retirement plan, which the Louisiana Supreme Court has held to be a form of deferred compensation subject to the three-year prescriptive period of La. C.C. article 3494. See Fishbein v. State ex rel. Louisiana State University Health Sciences Center, 04-2482, p. 8 (La.4/12/05), 898 So.2d 1260, 1266. Accordingly, we find no manifest error in the trial court’s ruling that Ms. McCall’s claims regarding the $10,000 annual payments referenced in her 1993 employment contract are subject to the three-year prescriptive period of La. C.C. article 3494.
In her next assignment of error, Ms. McCall argues that the trial court erred in not awarding her, at a minimum, $30,000 under her December 31, 1993 employment contract, representing three of the annual $10,000 payments discussed in her first assignment of error. We agree. Because we find that the trial court correctly held that Ms. McCall’s claims for these $10,000 annual payments are subject to a three-year prescriptive period, it follows that she is entitled to an award of $30,000 for the last three years of her employment at Focus.
| 17Ms. McCall preserved her claim for these payments through the filing of her initial lawsuit in this matter in federal court in 2007. Her lawsuit in federal court was filed on September 6, 2007, and was dismissed for lack of subject matter jurisdiction on April 20, 2009. McCall v. Focus Worldwide Television Network, Inc., 2009 WL 1046791 (E.D.La. April 20, 2009). According to La. C.C. article 3462, an action commenced in an incompetent court can interrupt prescription only as to a defen *886 dant served by process within the prescriptive period. See also Woods v. State, Department of Health and Hospitals, 08-0257 (La.App. 1 Cir. 6/6/08), 992 So.2d 1050. The record shows that on November 13, 2007, Philip Brooks, a director of Focus, signed a “Waiver of Service for Summons” as to Ms. McCall’s federal court lawsuit. Because the waiver of service was signed within the prescriptive period, prescription was continuously interrupted until the judgment of dismissal was signed in federal court on April 20, 2009. The instant state court lawsuit was timely filed on September 17, 2009.
We also find no merit in Focus’ argument that because the 1993 employment contract required WLAE to pay one-half of Ms. McCall’s salary, Focus should not be required to absorb WLAE’s portion of any payments owed to Ms. McCall. The evidence in the record establishes that after Focus discontinued its association with WLAE at the end of 1999 and until Ms. McCall’s employment was terminated in 2007, Archbishop Hannan, as President of Focus, assumed the obligation to compensate Ms. McCall for her services in the amount previously shared by WLAE and Focus. Additionally, the above-mentioned payment of [ 1R$10,000 made directly to Ms. McCall at the end of 1999 was issued on a Focus account and check.
Accordingly, the trial court judgment dismissing all of Ms. McCall’s claims must be amended to award her $30,000, representing three $10,000 payments for the last three years of her employment with Focus.
In her next assignment of error, Ms. McCall argues that the trial court erred in granting Focus’ exception of no cause of action as to her claim for what she charactei'izes as tenured employment, but what Focus characterizes as a claim for lifetime employment. Ms. McCall argues, in the alternative, that even if the term of her purported 2003 employment contract is found to be indeterminate, it is supported by “valuable consideration,” and is thus valid. The trial court granted Focus’ exception of no cause of action, apparently accepting Focus’ argument that Ms. McCall is seeking enforcement of an unenforceable lifetime employment contract.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. B-G & G Investors VI, L.L.C. v. Thibaut HG Corp., 08-0093, p. 4 (La.App. 4 Cir. 5/21/08), 985 So.2d 837, 841. An appellate court reviews the granting of an exception of no cause of action de novo because it involves questions of law. Id., p. 2, 985 So.2d at 840. A review of Ms. McCall’s petition does not support her argument that she stated a cause of action to exempt 119her from the general prohibition in Louisiana against lifetime employment contracts. See La. C.C. article 2746 and 2747.
Furthermore, because the purported agreement relied upon by Ms. McCall would allow her to continue her employment at Focus “for as long as she desires,” this was a modification of the December 31, 1993 employment contract, in which she was obligated to perform certain work in exchange for compensation. La. C.C. article 1770 states:
A suspensive condition that depends solely on the whim of the obligor makes the obligation null.
A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.
La. C.C. article 1770 became effective in 1985; the comments thereto noted that the article, which reproduced the substance of former Civil Code articles 2024, 2034 and *887 2035, eliminated the expression “potesta-tive condition,” but did not change the law. Black’s Law Dictionary (9th Edition) defines “potestative condition” as “[a] condition that will be fulfilled only if the obligated party chooses to do so.” This definition is followed by the following note: “Louisiana no longer uses this term, instead providing that this type of condition will render the obligation null. La. Civ.Code art. 1770.” Id.
The purported agreement would give Ms. McCall the sole authority to decide how long she continued her employment at Focus. This is a condition that would be fulfilled only if she chose to do so. The purported agreement relied upon by Ms. McCall would create a suspensive condition dependent solely on her whim. 12ftAn agreement with such a condition is a null obligation under La. C.C. article 1770. Thus, the trial court did not err in granting Focus’ exception of no cause of action as to Ms. McCall’s claim for tenured or lifetime employment.
In another assignment of error,[12] Ms. McCall argues that the trial court erred in dismissing Ms. McCall’s re-vendicatory action for enforcement of the equipment/videotape contract. This claim was dismissed after trial on the merits. An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The alleged contract to which Ms. McCall refers in this assignment of error was allegedly authorized by a resolution of the Focus Board of Directors on March 20, 2003. The alleged agreement, entitled “ARTICLE FOCUS 1” and signed by Archbishop Hannan and Ms. McCall, purports to transfer title and ownership of certain equipment, videotapes and other movable property from Archbishop Han-nan to Ms. McCall “for the amount of one dollar and other valuable consideration.”
Preceding the alleged agreement above was a separate page entitled Resolution of the Board of Directors of Focus Worldwide Network, which stated:
Be it known that the following attached Resolution ARTICLE FOCUS 1 was duly made and passed at the Board of Directors Meeting of FOCUS WORLDWIDE NETWORK ON March 20, 2003 THAT:
121 Contrary to the wording of this resolution, and the above-discussed purported resolution of March 20, 2003 authorizing Ms. McCall’s employment “for as long as she desires,” the evidence in the record is clear that no meeting of the Focus Board of Directors was held on March 20, 2003, nor was there any notice of such meeting sent to the Board of Directors. Furthermore, there is no evidence in the record proving that the Board of Directors later authorized or ratified the March 20, 2003 resolutions by either its actions or inac-tions.
The issue of whether or not a Board of Directors’ meeting was held on March 20, 2003 was addressed in Ms. McCall’s deposition in the following exchange:
Q. But you acknowledge that there was not a formal board of directors meeting relating to this resolution?
A. I acknowledge that we handled this like we handled other decisions that we made with the board.
The record includes affidavits of directors Charlene Vance, Philip Brooks, Charles Read and Archbishop Hannan, *888 stating that no meeting of the Board of Directors was held on March 20, 2003, and that these resolutions were not authorized by the Board of Directors. At trial, Ms. Vance testified that no meeting was held on March 20, 2003. Ms. McCall testified at trial that she “believed” there was a meeting of the Board of Directors on that date, because it was Archbishop Hannan’s common practice to draw up resolutions, call the board members and have them approve the resolutions over the telephone. In her opinion, that constituted a meeting, and she believes such a meeting occurred on March 20, 2003.
122Given the overwhelming evidence that the agreement to transfer equipment and other movable property of Focus to Ms. McCall was not authorized at a Board of Directors’ meeting as stated in the resolution authorizing this agreement, we find no error in the trial court’s decision to dismiss Ms. McCall’s claim for the enforcement of this agreement. We also note that the other purported resolution of March 20, 2003, allowing Ms. McCall to continue her employment with Focus “for as long as she desires” was not authorized at a Board of Directors’ meeting as stated in the resolution and was not later authorized or ratified by the Board of Directors. Therefore, even assuming arguendo that Ms. McCall had stated a valid cause of action for this claim, which we conclude she did not, the purported agreement would be unenforceable. Although Ms. McCall correctly states that the minutes of a July 14, 1999 membership and Board of Directors’ meeting of Focus show that Archbishop Han-nan was granted “full power and authority to sign any and all documents,” the two purported resolutions of March 20, 2003 were nonetheless invalid. The agreements purporting to allow Ms. McCall to continue her employment at Focus “for as long as she desires” and to acquire property of Focus cannot be enforced because the agreements were not properly authorized by a valid corporate resolution or by any legal theory of corporate law.
In the final assignment of error, Ms. McCall argues that the trial court erred in denying her motion for partial summary judgment as to her allegedly improper removal as a corporate officer of Focus, while granting Focus’ cross-motion for summary judgment on the same issue. This argument refers to the April 25, 2011 | ^judgment, in which the trial court found that Charles Read was a member of the corporate membership “from April 29, 2002 to present,” and that the purported resolution submitted by Ms. McCall is invalid. The judgment referred to the purported resolution of the officers of Focus, dated March 21, 2003, removing Charles Read as an officer of the corporation. The resolution failed to address his removal as a member. In her motion for summary judgment, Ms. McCall sought a ruling that there is no material fact at issue that her termination as Vice President and Secretary of Focus was not properly authorized or consistent with the procedures for termination set forth in the Focus Articles of Incorporation.
An appellate court reviews summary judgments de novo, using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882.
The record shows that on July 14, 1999, Archbishop Hannan signed the Amendment and Restatement of Articles of Incorporation of Focus Worldwide Television Network, Inc. According to this document, as of that date, the only members of the corporation were Ms. McCall and Archbishop Hannan. The Articles stated that the membership shall consist of those two members, “with such other additional *889 members who are from time to time appointed by the membership of the corporation.” On April 29, 2002, in a document entitled “Unanimous Consent Agreement by the Members of Focus Worldwide Television Network, Inc., A Louisiana NonProfit Corporation,” Ms. McCall and Archbishop Hannan appointed Charles Read to be a member of Focus.
|24Ms. McCall contends that Mr. Read was removed as a member of Focus by resolution of the officers[13] dated March 21, 2008. However, that resolution, signed by Ms. McCall and Archbishop Hannan, stated as follows:
Be it resolved that by a majority vote, Rusty Reed [sic] has been removed as an officer of the corporation of Focus Worldwide Network beginning on this day Friday March 21, 2003.
(Emphasis added).
Ms. McCall argues that the use of the word “officer” instead of “member” was merely a typographical error, and that Mr. Read was never an officer of Focus. But the fact remains that there is no evidence in the record showing that Mr. Read was properly removed as a member of Focus prior to the May 8, 2007 Focus Membership meeting, the notice of which shows that Ms. McCall’s name was not included on the slate of members, directors or officers of Focus to be elected or appointed at that meeting.
La. R.S. 12:225, relating to the governance of non-profit corporations, such as Focus, states, in pertinent part:
F. The articles may provide that only the members, or only a particular class or classes of directors, or only directors elected by the vote of a particular class or series of members, may elect certain or all of the officers, in which event officers so elected may be removed without cause only by the members or directors empowered to elect their successors.
Given the evidence offered in support of and in opposition to the motions for summary judgment filed by both parties on the issue of Mr. Read’s membership in Focus as of the May 8, 2007 Focus membership meeting, there is no question of fact that he was still a member as of that date, and that the March 21, 2003 1 ⅞-,resolution did not validly remove him as a member. Thus, Mr. Read was authorized to vote on the new slate of members, directors and officers at the May 8, 2007 meeting, a slate which did not include Ms. McCall’s name. Accordingly, the trial court correctly denied Ms. McCall’s motion for partial summary judgment and correctly granted Focus’ cross-motion for summary judgment, finding that Charles Read was a member of the Focus corporate membership from April 29, 2002 until the date of the judgment (April 25, 2011), and that the purported resolution removing Mr. Read is invalid.
For the reasons stated above, we affirm the trial court’s ruling that a three-year prescriptive period applies to Ms. McCall’s claims regarding the $10,000 annual payment referenced in the 1993 employment contract. We also affirm the trial court judgment denying Ms. McCall’s motion for partial summary judgment and granting Focus’ cross-motion for summary judgment, finding that Charles Read was a member of the corporate membership at the time of the May 8, 2007 Focus membership meeting and that the purported *890 resolution submitted by Ms. McCall on that subject is invalid. We hereby amend the December 13, 2011 judgment, which dismissed all of Ms. McCall’s claims, to award her the sum of $30,000, representing $10,000 for each of the last three years of her employment at Focus, plus interest from date of judicial demand. In all other respects, we affirm the December 13, 2011 judgment.
AMENDED, AND AS AMENDED, AFFIRMED

. According to the July 14, 1999 “Amendment and Restatement of Articles of Incorporation of Focus Worldwide Television Network, Inc.,” Focus is a Louisiana non-profit coipo-ration, “organized exclusively for charitable and/or educational purposes, including, for such purposes, the making of distributions to organizations which qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding section of any future United States internal revenue law.”

. Archbishop Hannan died on September 29, 2011.

. At the end of 1999, Focus discontinued its use of the studios at WLAE, and the two corporations had no further association other than WLAE airing the FOCUS weekly television show,

. Focus Syndicate, Inc. was a predecessor-in-interest of the Focus Worldwide Television Network, Inc.

. Ms. McCall was the named insured and policyholder.

. Focus contends that there was no "retirement plan” in the sense of an organized mechanism by which one would invest in and obtain retirement benefits. Ms. McCall argues that the "plan” is the above-quoted employment contract executed on December 31, 1993. The record is unclear as to what this "plan” was.

. McCall v. Focus Worldwide Television Network, Inc., 2009 WL 1046791 (E.D.La. April 20, 2009).

. La. C.C. article 3462 states: “Prescription is interrupted when the owner commences action against the possessor, or when the obli-gee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within a prescriptive period."

. This Unanimous Consent Agreement was signed by Archbishop Hannan and Ms. McCall, who were the only 2 members of Focus prior to the appointment of Mr. Read.

. As we discuss below in more detail, Ms. McCall contends that this purported resolution removed Mr. Read as a member. However, the document states that Mr. Read was being removed as an officer.

. Ms. McCall did not present any assignments of error regarding the trial court’s granting of Ms. Vance’s exception of no cause of action.

. Although this assignment of error was addressed last in Ms. McCall's brief, we are addressing it out of order because it relates to the previous assignment of error.

. Although Ms. McCall claims that Mr. Read was removed by the other members, i.e., she and Archbishop Hannan, the purported resolution of March 21, 2003 is entitled "Resolution of the Officers of the Corporation of Focus Worldwide Network.” (Emphasis added.)