*467 JAMES F. McKAY III, Judge.
11The defendants, J. Everett Eaves, Inc. (Eaves) and Westport Insurance Group (Westport), appeal a trial court judgment finding them liable for negligence in a Hurricane Katrina related insurance claim. The plaintiff, Isidore Newman School (Newman), answered the appeal contending that the trial court erred in allocating it 70% comparative fault. We affirm.
FACTS AND PROCEDURAL HISTORY
From 1989 until 2005, Cornelius “Hap” Crusel, an insurance broker with J. Everett Eaves, Inc. consulted with and sold property and casualty insurance to Isidore Newman School. Every year, Mr. Crusel provided a written proposal of recommended coverage and met with Newman’s business managers[1] to discuss these recommendations. From 1989 until 1999, Newman purchased $250,000.00 of extra expense coverage. In 1999, the designation was changed to business income/extra expense coverage, but the limits remained at $250,000.00. For the|22003-2004 policy, the business income/extra expense policy limit was increased to $350,000.00. When speaking with Newman’s business managers, Mr. Crusel explained that business income/extra expense coverage protected the school against the risk that it would incur extra expenses while it was fixing its physical damages. The example given was that this coverage would pay for trailers on the football field should the school building(s) be damaged and unable to be used.
In August of 2005, as a result of Hurricane Katrina, Newman’s property suffered physical damages and the school was closed for several months. In August of 2005, the policy limits provided by the business income/extra expense coverage was $350,000.00. In May of 2006, Newman filed suit against Eaves and Westport Insurance Group, the errors and omissions insurer of Eaves. Newman alleged that Mr. Crusel was negligent in failing to advise school personnel that business income/extra expense coverage included tuition loss.
The trial court found that Newman had proven by a preponderance of the evidence that Mr. Crusel had breached the duty of care required of an insurance broker. However, the trial court also found that Newman was not justified in relying solely on the advice it received from Mr. Crusel. Based on its findings, the trial court awarded Newman $3,166,606.00 plus court costs and interest from the date of judicial demand. The trial court reduced this amount by 70% due to Newman’s comparative fault. The defendants have appealed from this judgment and the plaintiff has answered their appeal.
|;¿DISCUSSION
On appeal, the defendants raise the following specifications of error: 1) the trial court erred by failing to hold that plaintiffs claim was preempted under the one-year peremption provision of La. R.S. 9:5606; 2) the trial court erred by failing to hold that plaintiffs claim was preempted under the three-year peremption provision of La. 9:5606; 3) the trial court erred in holding that Mr. Crusel breached a duty of care required of a broker. The plaintiff contends that the trial court erred in assigning it a disproportionately large share of the comparative fault.

Peremption

The defendants argue that Newman’s claims are preempted under both the one *468 year and three year provisions of La. R.S. 9:5606. This statute provides that no action may be brought against an insurance broker unless done so within one year from the date of the alleged act, omission, or neglect was discovered or should have been discovered and within three years from the date of the alleged act, omission or neglect, regardless of the date of discovery.
In the instant case, Mr. Crusel admitted that he last met with Newman’s business manager in June of 2005, and he issued his last insurance proposal on June 29, 2005. It is well settled that an agent’s misrepresentations or negligent acts occurring after the issuance of the original insurance policy constitute separate and distinct torts. See Sonnier v. Louisiana Farm Bureau Mutual Ins. Co., 2005-1006 (La.App. 3 Cir. 3/1/06), 924 So.2d 419, 422. Mr. Crusel’s last meeting with Newman officials was less than one year before Newman filed its lawsuit. In fact, |4Mr. Crusel met with Newman’s business managers every year to present his insurance recommendations. These meetings were more than mere renewals of the existing policy. They were sessions to evaluate Newman’s current insurance coverage and advise whether that coverage needed to be changed. Accordingly, we find no error in the trial court’s finding that the plaintiffs claims were not preempted. We also find no merit in the defendants’ arguments that Newman’s claims are preempted by the three year provision of La. R.S. 9:5606.

Breach of Duty of Care

Under Louisiana law, an insurance broker or agent owes a fiduciary duty to his customers, which includes a duty to prudently advise his clients regarding recommended coverage. See Taylor v. Sider, 99-2521 (La.App. 4 Cir. 5/31/00), 765 So.2d 416; Durham v. McFarland, Gay and Clay, Inc., 527 So.2d 403 (La.App. 4 Cir. 1988). The duty imposed upon insurance agents, like that imposed on attorneys, physicians, and accountants, is that of “reasonable diligence,” a breach of which duty gives rise to a claim for negligence. Roger v. Dufrene, 613 So.2d 947, 949 (La.1993). When an insurance advisor voluntarily assumes a task, he must perform that task in a reasonable and prudent manner. See generally Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
In the instant case, Mr. Crusel assumed a duty to provide recommendations on the scope and amount of insurance coverage that Newman should purchase. Mr. Crusel failed to inform Newman that business income/extra expense coverage is designed to protect against two distinct risks in their case: the payment of extra | ^expenses and the loss of tuition revenue. To properly advise a client about the business income/extra expense coverage, an insurance advisor must explain both components of the coverage. Explanation of both risks is important because without understanding the scope of what the insurance is designed to cover, it is impossible to calculate the magnitude of the exposure and make informed decisions about what limits of insurance should be purchased. The insurance advisor must also provide the client with an estimate of the cost of protecting against both the tuition loss risk and the extra expense risk. By not adequately informing his client regarding their options, Mr. Crusel breached his duty to them. Accordingly, we find no error in the trial court’s finding.

Comparative Fault

Although Newman admits that it was partially at fault for the damages that it incurred, it contends that the trial court erred in assigning it too high a percentage *469 of fault. In assessing the nature of the conduct of the parties to a negligence action, various factors may influence the degree of fault assigned. These may include: whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, significance of what was sought by the conduct, capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). In the instant case, Newman’s business manager did not review the insurance policy until September of 2005. Newman is also managed by a |f,board made up of qualified and professional people who should have been more aware of the potential risk from having inadequate business income/extra expense coverage. It was not reasonable for Newman’s business managers and board to rely entirely on what was represented to them by Mr. Crusel. Allocation of comparative negligence is a factual matter within the discretion of the trial court, and such determination will not be disturbed on appeal absent manifest error. Steadman v. Georgia-Pacific Corp., 95-1463 (La.App. 1 Cir. 4/6/96), 672 So.2d 420. Accordingly, we find no error in the trial court’s assigning Newman 70% of the fault in this case.
CONCLUSION
For the above and foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
ARMSTRONG, C.J., Concurs in the Result.
BELSOME and BONIN, JJ„ dissent with reasons.

. From 1989 through December 2000, Newman’s business manager was Martin Macdiar-mid. From October 28, 2000 through October 1, 2003, Newman's business manager was R. Leigh Barker. From January 5, 2004 through June 30, 2006, Newman's business manager was Fred Drew.