ROSEMARY LEDET, Judge.
| iThis is a Hurricane Katrina-related suit by an insured against its insurance agent and his agency for negligence. The insured contends that the agent mislead it to believe that the business interruption/extra expense (“BI/EE”) coverage it purchased covered flood-related business interruption losses. Initially, the trial court granted the motion for summary judgment filed by the defendants — the agent, John O’Brien, and his agency, Powell Insurance Agency (“Powell”). Subsequently, the trial court granted the motion for new trial filed by the plaintiff — Mandi-na’s Inc., doing business as Mandina’s Restaurant (“Mandina’s”). The trial court vacated its prior judgment (in which it had granted the defendants’ motion for summary judgment) and denied the defendants’ motion for summary judgment. At the parties’ request, the trial court certified its interlocutory judgments granting the motion for new trial and denying Powell’s motion for summary judgment as final judgments for purposes of immediate appeal under La. C.C.P. art. 1915.
|2For the reasons that follow, we convert the defendants’ appeal to an application for supervisory writ, grant their writ, and reverse the trial court’s judgments.
FACTUAL AND PROCEDURAL BACKGROUND
Mandina’s owns and operates a popular restaurant on Canal Street in New Orleans. For over a decade before Hurricane Katrina made landfall in the New Orleans area (August 29, 2005), Mandina’s obtained insurance for its restaurant and related commercial properties (its warehouse and office) from Powell. Powell provided Mandina’s with both a fire/windstorm policy and a flood policy. The flood policy was provided through the National Flood Insurance Program (“NFIP”) and never included BI/EE coverage. Mandi-na’s added BI/EE coverage to its fire/windstorm policy several years before the hurricane; however, this policy always excluded coverage for flood-related losses.
On an annual basis, Mr. O’Brien met with Mandina’s owner, Tommy Mandina, to discuss and renew the policies. At these annual meetings, Mr. O’Brien presented Mandina’s with a written proposal. Five days before the hurricane (August 24, 2005), Mr. O’Brien conducted the annual meeting with Mr. Mandina. At that meeting, Mr. O’Brien recommended that Man-dina’s increase its existing BI/EE coverage under its fire/windstorm policy from $400,000 to $500,000. Mr. Mandina ac *101 cepted the recommendation. Besides increasing the limits of the existing BI/EE coverage, only minor coverage changes were made. Mandina’s did not receive a copy of the 2005-06 renewal policies until after the hurricane.
|sAs a result of the hurricane, Mandina’s sustained significant flood and windstorm damages, which resulted in a substantial business interruption loss. According to Mandina’s, it first learned that it lacked BI/EE coverage for its flood-related business interruption loss when it reported its loss to its insurer. This suit followed.
In its petition, Mandina’s alleged that Powell and Mr. O’Brien held themselves out as experts in the insurance field and that it employed them in reliance on their expertise to recommend and secure proper and appropriate insurance coverage, including business interruption insurance in the maximum amount legally permitted. Mandina’s further alleged that it was advised by Powell, through Mr. O’Brien, that it was purchasing the maximum amounts and coverage of insurance available on its properties, including business interruption insurance, and that it was not advised that the policies would not provide any coverage for flood-related business interruption. Nor was it advised that an additional policy of insurance could have been purchased that would have provided coverage for flood-related business interruption. Man-dina’s still further alleged that it reasonably believed that in the event of any significant loss to its properties resulting in a business interruption loss, the insurance policies it purchased from Powell would provide coverage for its business interruption claim. Based on these allegations, Mandina’s averred that the defendants breached their legal and fiduciary duty to accurately and completely explain and disclose the insurance coverage available to Mandina’s, including business interruption coverage, and to insure that the coverage purchased by Mandina’s provided the types and amounts of coverage sought by Mandina’s, including for flood-related business interruption loss.
I/The defendants moved for summary judgment on the basis that Mandina’s could not satisfy its evidentiary burden to establish that they breached any duty. In support, they offered Mr. O’Brien’s affidavit and Mr. Mandina’s deposition, which they contended established the following undisputed facts:
• John O’Brien (Powell) sold Mandina’s Restaurant commercial insurance for at least a decade before Hurricane Katrina struck the New Orleans area.
• For at least several years prior to Hurricane Katrina, Mandina’s windstorm/fire policies included business interruption and extra expense coverage (“BI/EE”).
• A reading of Mandina’s past policies explains that BI/EE applies only if the BI/EE loss is a result of a covered loss. Flood has always been specifically excluded as not being a covered loss.
• Tommy Mandina testified as the corporate representative for Mandina’s Restaurant that he knew that he had no BI/EE coverage under Mandina’s flood policy.
• Tommy Mandina testified that he knew that Mandina’s fire/windstorm policy excluded flood coverage.
• Mandina’s contention is that it was buying BI/EE coverage for a “catastrophic loss,” and Tommy Mandina thought that would include BI/EE coverage for flood.
• Tommy Mandina testified that he did not review Mandina’s insurance policies upon receipt to verify whether the BI/EE coverage included flood as a covered cause of loss.
*102 • Tommy Mandina admits that John O’Brien never told him that Mandina’s had BI/EE coverage in the event of a flood.
• Tommy Mandina never asked John O’Brien whether Mandina’s BI/EE coverage included flood as a covered cause of loss.
• Tommy Mandina never asked John O’Brien prior to Hurricane Katrina to obtain BI/EE coverage for Mandina’s which would include flood as a covered cause of loss.
Finding the Louisiana Supreme Court’s decision in Isidore Newman School v. J. Everett Eaves, Inc., 09-2161 (La.7/6/10), 42 So.3d 352, “on. point,” the trial |scourt granted the defendants’ motion for summary judgment. In its written reasons for judgment, the trial court stated:
Defendant argues that in cases against agents for failure to give accurate advice as to the extent of coverage, liability only attaches when there is some specific question from the insured. Absent a specific question from the insured, the agent may presume that the insured understands that policy’s terms. Isidore Newman School v. J. Everett Eaves, Inc., 42 So.3d 352, 357 (La.2010). In the Newman case, the Supreme Court also said that that client is charged with the duty of reviewing an insurance policy to make sure his needs are met. Id.
It is telling that on page 359 of Newman, the Supreme Court specifically quotes from the annual Insurance Proposal rendered to Newman in 2003 for the policy that pre-dated Katrina by two full years. The point made by the Supreme Court is that Newman (like Man-dina here) had years to read the relevant coverage.
It is also telling that a careful review of Mr. Mandina’s deposition (pages 16 to 18) shows that Mr. Mandina:
• admits that he never asked John O’Brien whether he had business interruption for flood and O’Brien never told him that he had business interruption for flood;
• concedes that he knew the flood policy did not provide business interruption coverage;
• states he knew that his other policy was for “fire and windstorm” and specifically excluded flood.
It is simply not reasonable to assume that the business interruption portion of the fire/windstorm policy would cover business interruption caused by flood. This is on point with Newman. (Emphasis in original).
In response, Mandina’s filed a motion for new trial. In support, Mandina’s presented the trial court with the following enumeration of facts that it contends it established in opposing the motion for summary judgment:
• Each year POWELL would make specific recommendations as to what insurance coverage should be obtained and what amounts should be obtained because each year the coverages and amounts of coverage being offered by the insurers changed and as a result the coverages and amounts being recommended by POWELL would change.
h* MANDINA relied upon POWELL as the expert and would purchase the maximum insurance coverage recommended by POWELL.
• Five days before the occurrence of Hurricane Katrina, POWELL met with MANDINA and was quite emphatic in recommending that MANDI-NA raise its business interruption cov *103 erage limits due to the close proximity of Hurricane Katrina to Louisiana.
• As a result of its meeting with POWELL five days before the occurrence of Hurricane Katrina, and the increase in coverage for business interruption recommended by POWELL, MANDI-NA was led to believe that it had coverage for business interruption losses caused by wind, flood, and fire.
• MANDINA never received its policies prior to the occurrence of Hurricane Katrina, it did not have its policies to review prior to the occurrence of the hurricane.
• After the occurrence of Hurricane Katrina, upon re-opening its business, MANDINA purchased business interruption coverage for flood losses.
Based on the above facts, Mandina’s contended that it established the existence of genuine issues of material facts precluding summary judgment.
On September 13, 2012, the trial court granted Mandina’s motion for new trial, vacated its previous judgment, and denied the defendants’ motion for summary judgment. In so doing, the trial court provided the following oral reasons:
I do believe ... that there is a genuine issue. It has to be what did Mr. Mandina believe; what did Mr. Powell believe. And that’s not clear here. So, the Court is going to deny the motion [for summary judgment]. I am going to grant you a new trial.... I’m denying the summary judgment.
As noted at the outset, the trial court certified its interlocutory judgments granting the motion for new trial and denying Powell's motion for summary judgment as final judgments for purposes of immediate appeal under La. C.C.P. art. 1915. In so doing, the trial court noted:
[A]n immediate appeal on the issue presented on the Motion for Summary Judgment is in the interest of both justice and judicial economy. If the Court of Appeal finds that summary judgment should |7be entered as prayed for by defendants that would terminate the entirety of this litigation in the trial court. If summary judgment is not granted, then it is estimated that trial of this case on the merits will take between three to five days given the complexity of the quantum issues. Hence, an immediate appeal on this issue is clearly warranted and advisable.
This appeal followed. Before addressing the merits, this court must address the preliminary issue of whether it has appellate jurisdiction.
APPELLATE JURISDICTION
Although the trial court (at the parties’ request) certified the February 14, 2012 judgments granting the motion for new trial and denying the motion for summary judgment as final under La. C.C.P. art. 1915, the trial court’s certification is not determinative of this court’s appellate jurisdiction. See Roundtree v. New Orleans Aviation Bd., 04-0702, p. 6 (La.App. 4 Cir. 2/4/05), 896 So.2d 1078, 1083. This appeal seeks review of two interlocutory judgments — the granting of a motion for new trial and the denying of a motion for summary judgment. Neither a judgment granting a motion for new trial nor a judgment denying a motion for summary judgment is an interlocutory judgment subject to being designated as final pursuant to La. C.C.P. art. 1915.
The proper procedural device to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ. Delahoussaye v. Tulane University Hosp. and Clinic, 12-0906, 12-0907, p. 4 (La.App. 4 *104 Cir. 2/20/13), 155 So.3d 560, 562, 2013 WL 633121 (citing La. C.C.P. art. 2201). In certain circumstances, this court has exercised its discretion to convert an appeal of an interlocutory judgment that is not immediately appealable into a supervisory writ application. M.This court has exercised its discretion to do so when the following two circumstances both are present:
|8(i) The motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal,
(ii) When the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court’s decision would terminate the litigation.
Delahoussaye, 12-0906 at pp. 4-5, 155 So.3d at 563. Both circumstances are present here. The motion for appeal was filed within the thirty day period applicable to supervisory writs contained in Uniform Rule 4-3; thus, an application for supervisory writs would have been timely. As the trial court pointed out, a finding that the defendants are entitled to summary judgment — granting the writ — will terminate this litigation. We thus exercise our discretion and convert the instant appeal to an application for supervisory writ.
STANDARD OF REVIEW
The standard of review of a trial court’s ruling granting a motion for new trial is an abuse of discretion standard. Midland Funding LLC v. Kelly, 11-0659, p. 2 (La.App. 4 Cir. 12/7/11), 81 So.3d 84, 86 (citing Brooks v. Wiley, 07-1035, p. 3 (La.App. 4 Cir. 6/4/08), 985 So.2d 1269, 1271 (citing Davis v. Wal-Mart Stores, Inc., 00-445 (La.11/28/00), 774 So.2d 84)). The standard of review of a trial court’s ruling granting a motion for summary judgment, pursuant to La. C.C.P. arts. 966 and 967, and the jurisprudence, is well-settled and can be summarized as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled |9to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential ele *105 ments of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.
Orleans Parish School Bd. v. Lexington Ins. Co., 12-1686, p. 5 (La.App. 4 Cir. 6/5/13), 118 So.3d 1203, 1212 (quoting Teter v. Apollo Marine Specialities, Inc., 12-1525, pp. 6-7 (La.App. 4 Cir. 4/10/13), 115 So.3d 590, 597 (quoting Johnson v. Loyola University of New Orleans, 11-1785, pp. 7-8 (La.App. 4 Cir. 8/8/12), 98 So.3d 918, 923-24); see also McGowan v. Housing Authority of New Orleans, 12-1418, p. 12 (La.App. 4 Cir. 3/27/13), 113 So.3d 1143, 1148 (quoting Johnson, 11-1785 at pp. 7-8, 98 So.3d at 923-24)).
ImDISCUSSION
Insurance agents, brokers, and their agencies are not liable to their customers simply because there is an unexpected, uncovered loss. Frederic Theodore Le Clercq, SHOW ME THE MONEY! What Exactly Are the Duties of Insurance Agents and Brokers?, 54 La. B.J. 94 (Aug./Sept.2006). Rather, “Louisiana insurance agents, brokers and their agencies can be held liable for such claims only if they are found to have breached a legal duty owed to their customers.” Id. (citing Taylor v. Sider, 99-2521 (La.App. 4 Cir. 5/31/00), 765 So.2d 416, 418).[1]
The controlling authority on the duty of Louisiana insurance agents, brokers, and their agencies to their customers is the Louisiana Supreme Court’s decision in Newman, supra. In the Neuman case, the customer was a private school located in New Orleans, Louisiana. Newman sustained substantial physical damage to its school as a result of Hurricane Katrina. Following the hurricane, Newman was closed for multiple months and sustained over three million dollars in lost tuition revenues. Following the hurricane, Newman first learned that under its insurance policy lost tuition revenue was covered under its BI/EE coverage; however, its BI/EE coverage was limited to $300,000. Newman sued its insurance agent alleging that the agent failed to advise that lost tuition revenue was included in the BI/EE coverage and led it to believe that the BI/EE coverage was only for physical damage to buildings. Newman maintained that had it been informed that the BI/EE coverage included lost tuition revenue, it would have increased its BI/EE coverage.
| nThe trial court in Newman denied the agent’s motion for summary judgment finding “there was an issue of material fact as to whether Eaves [the agent] failed to properly advise Newman regarding the coverage options and the amount of coverage needed.” Newman, 09-2161 at p. 4, 42 So.3d at 355. Following a trial on the merits, the trial court found Eaves breached its duty of care by failing to explain the *106 components of BI/EE coverage so that Newman could make an informed choice regarding that coverage and failing to include in its annual recommendations of suggested coverage a sufficient sum to cover lost tuition revenue. The trial court, however, imposed the lion’s share of fault (70%) on Newman for failing to review its own policy and for unjustifiably relying solely on Eaves’ advice.
On appeal, this court in Newman affirmed. Isidore Newman School v. J. Everett Eaves, Inc., 08-1368 (La.App. 4 Cir. 8/5/09), 17 So.3d 465. In so doing, this court found that the agent assumed a duty and breached that duty. As the Supreme Court noted, a plurality of this court held that “Eaves [the agent] assumed a duty to provide recommendations on the scope and amount of insurance coverage that Newman should purchase. By failing to adequately inform their client regarding options, Eaves breached its duty to the client.” Isidore, 09-2161 at p. 5, 42 So.3d at 355.[2]
The Supreme Court granted Eaves’ writ and framed the issue presented as whether the insurance broker or agent owed a duty to a customer, Newman, to provide recommendations on the scope and amount of property and casualty insurance coverage that the school should procure, and whether the insurance | ^broker or agent owed a duty to explain the components of the existing policy, which clearly informed Newman that the BI/EE coverage was designed to encompass lost tuition revenue. Answering that question in the negative, the Supreme Court first reviewed its own jurisprudence on the issue, noting:
This Court in Karam v. St. Paul Fire & Marine Insurance Co., 281 So.2d 728, 730-31 (La.1973), stated:
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
[[Image here]]
In the wake of Karam, this Court maintained that an insurance agent owes a duty of “reasonable diligence” to his customer. Roger v. Dufrene, 613 So.2d 947, 949 (La.1993). This duty of “reasonable diligence” is fulfilled when the agent procures the insurance requested. Karam, supra. Jurisprudence has suggested that an insured has a valid claim against the agent when the insured demonstrates that: “1) the insurance agent agreed to procure the insurance; 2) the agent failed to use ‘reasonable diligence’ in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance and 3) the agent acted in such a way that the client could assume he was insured.” Id.
Newman, 09-2161 at pp. 6-7, 42 So.3d at 356-57.
The Supreme Court next reviewed the jurisprudence of the Louisiana appellate courts addressing the duty owed to the insured by an insurance agent; it noted:
*107 In Smith v. Millers Mutual Ins. Co., 419 So.2d 59 (La.App. 2 Cir.1982), the Second Circuit Court of Appeal found no authority for the proposition that an insurance agent has a duty to recommend to an insured that he increase his personal liability limits. In Graves v. State Farm Mutual Auto Ins. Co., 01-1243 (La.App. 3 Cir. 6/26/02), 821 So.2d 769, the Third Circuit Court of Appeal held that the insurance agent had no affirmative duty to inquire into the clients financial condition and make recommendations about higher auto liability coverage, or that the client purchase an umbrella policy; the only duty imposed on the agent is to obtain the coverage requested by the customer. In Zinsel Co. v. J. Everett Eaves, Inc., 99-691 (La.App. 5 Cir. 11/30/99), 749 So.2d 798, the Fifth Circuit Court of Appeal determined that any duty the agent had to notify his client of the availability of increased limits was satisfied by the agent’s letter to the insured.
In City Blueprint & Supply Co., Inc. v. Bob Boggio, et al., 08-1093 (La.App. 4 Cir. 12/17/08), 3 So.3d 62, the insured’s building sustained damage from the flooding associated with Hurricane Katrina. The insured sued its insurance agent, alleging that the agent had always assured them that they were “fully covered” and the hazard/fire policy in force, covered the property against flood damage. The insured filed suit against the insurance agent arguing “claims of negligence, ... breach of fiduciary duty, failure to obtain flood coverage, failure to advise regarding flood insurance options and availability, ... and failure to institute a policy whereby all agents would advise client regarding flood coverage.” Id. at 64. The insurance agent filed a Motion for Summary Judgment arguing that no duty was owed to advise the clients regarding flood coverage. The trial court granted the motion and dismissed the insured’s claims. The court of appeal affirmed the trial court’s ruling, holding that the agency and agent did not breach a duty owed to the client by failing to advise the client about flood insurance options. Particularly, the Fourth Circuit Court of Appeal held that absent a specific question from the insured, an agent has no duty to advise a client that it is underinsured, and furthermore, that “[a]n insured is responsible for reading his policy and is presumed to know its terms.” Id. at 66-67.
Similarly, in Heidingsfelder v. Hibernia Insurance, L.L.C., 09-0753 (La.App. 4 Cir. 11/18/09), 25 So.3d 976, the Fourth Circuit declined to impose a duty on an agent to identify a client’s coverage needs or to advise the client that he was underinsured. The Fourth Circuit recognized that an insurance agent does not have an “independent duty” to spontaneously advise insureds regarding various insurance options. As in City Blueprint, the Fourth Circuit held that no agreement existed between the plaintiff and Hibernia Agency to procure flood insurance coverage for contents. Hence, the agency did not breach a duty to the plaintiffs by failing to procure flood insurance coverage for contents.
Newman, 09-2161 at pp. 7-10, 42 So.3d at 356-57. Finally, the Supreme Court reviewed the jurisprudence of the federal district courts addressing an agent’s duty to his client; it noted:
The federal district courts have ... determined that an agent has no duty to independently assess the needs of the insured and recommend coverage; instead, the insured is responsible for communicating his insurance needs, and reading the policy of insurance, upon receipt. See, Cameron Parish School *108 Bd. v. State Farm Fire and Cas. Co., 560 F.Supp.2d 485 (W.D.La.5/19/08).
In Dobson v. Allstate, 06-0252, 06-1097, 06-1064, 06-1255, 06-1734, 06-1585, 2006 WL 2078423 (E.D.La.7/21/06), the plaintiffs alleged that their agent failed to advise them that they were underinsured. There was nothing in the record to indicate that the Plaintiffs specifically inquired about a particular type, or amount of coverage. The court found that the agent had no duty to “spontaneously identify a client’s needs and advise him as to whether he is underinsured or carries the correct type of coverage.” Id. The court noted that Louisiana does not impose a duty on an agent to identify a client’s needs and assess what type and amount of coverage would sufficiently meet the client’s needs. See, Whitehead v. State Farm Ins. Co., 06-8115, 2006 WL 3747520 (E.D.La.12/15/06). The courts have held that it is the client’s responsibility or duty, not the agent, to determine the amount of coverage needed and advise the agent of those needs, and upon receiving the policy of insurance, the client has a duty to review the policy to make certain his needs are met. See, Frischhertz v. Lexington Ins. Co., 06-5676, 2006 WL 3228385 (E.D.La.11/3/06). The courts have noted that “the ‘advice’ that an agent had an affirmative duty to give the insured” involved “aspects of the policies ... that were not within the knowledge generally held by a lay person,” i.e., “the agent’s specific knowledge of the insured’s individual situation triggered that duty to disclose.” See, Parker v. Lexington, 064156, 2006 WL 3328041 (E.D.La.2006).
Newman, 09-2161 at pp. 9-10, 42 So.3d at 357-58.
Based on the above jurisprudence, the Supreme Court concluded:
[TJhe lower courts erred in holding that the insurance broker or agent owed a duty to advise the client as to the amount of insurance coverage to obtain. An agent has a duty of “reasonable diligence” to advise the client, but this duty has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage. It is the insured’s responsibility to request the type of insurance coverage, and the amount of coverage fyneeded. It is not the agent’s obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs. It is also well settled that it is insured’s obligation to read the policy when received, since the insured is deemed to know the policy contents.
Newman, 09-2161 at p. 12, 42 So.3d at 359.
On appeal, Powell and Mr. O’Brien contend that the jurisprudence, summarized in Newman, supports a finding that they are entitled to summary judgment as a matter of law. They contend that the trial court’s initial decision granting summary judgment was correct. They further contend that the trial court’s reasons for judgment it issued in granting their motion were correct.
According to the defendants, Mandina’s claim is based solely on the contention that Mr. O’Brien never told Mr. Mandina that the fire/windstorm policy did not cover flood-related BI/EE loss and that Mr. Mandina assumed such coverage was being purchased. In support, they cite Mr. Mandina’s deposition testimony, which was as follows:
Q: Can you tell me, in your own words, specifically what you’re claiming that Mr. O’Brien did wrong?
A. I was under the impression — I was led to believe that I was covered for business interruption for flood, fire, *109 windstorm; and nowhere in our conversations on that Wednesday before ... and we were talking about the hurricane coming because of it, you know, was supposed to hit Florida then they kept moving it on and on — was there ever a point where he said flood insurance was not covered with business interruption.
He was quite emphatic in saying we should raise the coverage. You know, this would be a great time to raise the coverage.
Q. When you say that coverage, which coverage in particular?
A. I’m talking about business interruption, and he explained that I could only draw a third of that a month. So if you had a catastrophe, you could only draw a third of whatever figure you chose ...
|1fiAt no point did he tell me flood wasn’t covered.
Mr. Mandina further testified that he was aware that the fire/windstorm policy excluded damages caused by flood. Nonetheless, he testified that his belief that the BI/EE coverage included flood losses was based on his understanding that it was a separate policy; more particularly, he testified:
It was my understanding that business interruption is a separate policy. That’s my understanding. Now, whether it falls under the windstorm, whether it’s issued as an addendum to the windstorm, I don’t — it was my understanding, and he explained it to me as, we’re giving you a policy of business interruption.
Mr. Mandina still further testified that he believed the BI/EE policy was for catastrophic events and that was why it was increased to $500,000 five days before Hurricane Katrina; specifically, he stated:
Obviously there was a catastrophe and I thought I was covered for business interruption due to flood, which I found out later that I was not. He [Mr. O’Brien] did not present any forms to me, asking me to sign anything saying you’re not covered for that as he did with other parts of the policy and it wasn’t in his proposal. So I was under the impression that I was covered for flood, since we did not receive the [2005— 06] policies because we signed up on a Wednesday and of course the storm hit on Monday. I was under the impression I was covered for this.
Mr. Mandina, however, acknowledged that he never asked Mr. O’Brien if the BI/EE coverage included flood-related losses and that Mr. O’Brien never told him that it did. Mr. Mandina also acknowledged that he did not review the prior policies that he received.
In granting Mandina’s motion for new trial and denying the defendants’ motion for summary judgment, the trial court found there was a genuine issue of material fact regarding “what did Mr. Mandina believe.” The trial court’s concern, as it expressed at the hearing on the motion for summary judgment, was whether Mr. Mandina reasonably relied on Mr. O’Brien’s representation regarding the 11 contents of the 2005-06 policies. The trial court noted that Mr. Mandina’s testimony was that he relied solely on Mr. O’Brien’s representations, which caused him to believe that he had obtained the maximum possible coverage for business interruption no matter what the cause.
The defendants contend that the trial court’s reliance on Mr. Mandina’s subjective belief that he obtained flood-related BI/EE coverage is misplaced. They contend that Mandina’s was required to show that Mr. Mandina’s belief was warranted by Powell’s actions and representations *110 and that he justifiably relied thereon. They note that Newman, supra, holds that an insured has a duty to read its policy and is presumed to know the contents of the policy. They further note that an insured’s reliance on an agent cannot be reasonable if the policy language is straightforward. They contend that such is the case here.
Mandina’s counters that it did not have the 2005-06 policies to review. Mandina’s contends that, contrary to the defendants’ contentions, Mr. Mandina justifiably relied on Powell’s actions and representations in stating on the eve of the storm that Mandi-na’s had to change its coverage to make sure it was covered for hurricane damages. Mandina’s thus maintains that the trial court correctly found that there are genuine issues of material fact as to what Mr. Mandina reasonably believed.
According to Mandina’s, the legal duty that Powell and Mr. O’Brien assumed and breached is the same duty that this court in its plurality decision in Newman found the agent breached — to provide recommendations on the scope and amount of insurance coverage that Mandina’s should purchase and to adequately inform their client regarding options. Mandina’s points out that the Supreme Court, in reversing this court, found no additional duty was assumed by Eaves (the |1Ragent) based on the following four facts: (1) the agent had proposed for Newman to increase its BI/EE coverage, but Newman had declined the request; (2) no evidence suggested that Newman intended to increase its coverage; (3) Newman received its policy before Hurricane Katrina struck, but failed to review its terms; and (4) no evidence suggested that the agent assumed a duty besides acting with reasonable diligence.
Mandina’s contends that none of those four factors is present in this case; rather, it contends the opposite is true in this case. First, Mandina’s accepted Powell’s recommendations to increase its BI/EE coverage before the hurricane. Second, after the hurricane, Mandina’s procured from Powell a separate policy providing BI/EE coverage for flood-related business interruption losses.[3] Third, Mandina’s could not read its 2005-06 policies because it never received a copy of its policies until after the hurricane. Finally, Mandina’s contends that all these circumstances establish that the defendants assumed a duty beyond acting with reasonable diligence. Mandina’s thus maintains that the trial court correctly concluded that, at a minimum, a genuine issue of material fact exists regarding whether the defendants assumed a duty to provide recommendations on the scope and amount of insurance coverage that Mandina’s should purchase and to adequately inform Mandina’s regarding its options.
In further support of its position, Mandina’s cites this court’s holding in Seruntine v. State Farm Fire and Cas. Co., 09-0230 (La.App. 4 Cir. 4/15/10), 38 So.3d 438, writ granted and judgment rev’d, 10-1108 (La.9/3/10), 42 So.3d 968 (mem.). Mandina’s points out that in Seruntine the plaintiffs alleged that they |1flrequested the agent procure full insurance coverage for their property. The plaintiffs further alleged that the agent led them to believe that whatever their flood insurance policy did not cover, their non-flood policies would cover. The plaintiffs’ deposition testimony was that they relied on the agent’s assurances and did not verify those *111 assurances by examining the policies when they were delivered or renewed. In addition to finding that the plaintiffs’ claim was not preempted, this court found that there were genuine issues of material fact regarding the plaintiffs’ detrimental reliance claim as to two of the three properties involved and thus partially (as to those two of the three properties) reversed the trial court’s decision granting the agent’s motion for summary judgment. Mandina’s contends that the Supreme Court’s reversal of this court’s decision was limited to the preemption issue and that this court’s analysis of the factual issues precluding summary judgment on the justifiable reb-anee claim remains valid.
Mandina’s reliance on this court’s decision in Seruntine and Newman, which the Supreme Court reversed, is misplaced. In both Seruntine and Newman the Supreme Court stressed the insured’s obligation to review its policies and that the insured is presumed to know the contents of its policies. In Seruntine, the Supreme Court issued the following per curium:
It is well settled that it is the insured’s obligation to read the policy when received, since the insured is deemed to know the policy contents. Isidore Newman School v. J. Everett Eaves, Inc., 09-2161 at p. 12 (La.7/6/10), 42 So.3d 352, 359; see also City Blueprint & Supply Co., Inc. v. Boggio, 08-1093 (La.App. 4th Cir.12/17/08), 3 So.3d 62. In the instant case, plaintiffs’ policies clearly revealed their flood limits were lower than their commercial policy limits and their properties’ value. Moreover, it is undisputed that a review of plaintiffs’ commercial policies would have revealed these policies excluded flood-damage.
Seruntine, 10-1108 at p. 1, 42 So.3d at 968.
| go Attempting to distinguish this case, Mandina’s contends that it did not have a duty to review its policies because it did not receive its 2005-06 policies until after the hurricane. This argument is unpersuasive. Nothing in its 2005-06 policies would have provided any additional information that Mandina’s could not have obtained by reviewing its prior policies. Indeed, as the trial court noted in its reasons for initially granting the summary judgment: “[i]t is telling that on page 359 of Neuman, the Supreme Court specifically quotes from the annual Insurance Proposal rendered to Newman in 2003 for the policy that pre-dated Katrina by two full years. The point made by the Supreme Court is that Newman (like Mandina here) had years to read the relevant coverage.” Mandina’s is presumed to know the content of its existing coverage. Thus, Mandina’s reliance on the fact it did not have a copy of its 2005-06 policies to review is misplaced.
We likewise find, as the defendants contend, that the trial court’s reliance on Mr. Mandina’s subjective belief in granting the motion for new trial and denying summary judgment was misplaced. Rejecting a similar argument, this court in City Blueprint & Supply Co. v. Boggio, 08-1093 (La.App. 4 Cir. 12/17/08), 3 So.3d 62, affirmed-the granting of summary judgment in the agent’s favor.
In City Blueprint, the plaintiffs, City Blueprint’s owners, argued that the agent negligently misrepresented the extent of City Blueprint’s coverage by assuring its owners that City Blueprint was “fully covered.” [4] This court reasoned 12¶ that to re *112 cover on a claim of negligent misrepresentation, a plaintiff must show, among other things, justifiable reliance.[5] The plaintiffs argued that the agent’s assurance that City Blueprint was “fully covered” — a statement that the defendants denied ever making — was a misrepresentation of the extent of the coverage. The agent argued that “fully covered” meant fully covered for hazards such as fire and theft, but not for flood. Finding the plaintiffs’ reliance on the “fully covered” statement was not justified, this court reasoned:
Regardless of whether the defendants made such a statement, City Blueprint’s reliance on the statement to mean that it had flood insurance was unreasonable in light of the fact that the policy specifically contained a straightforward, uncomplicated, exclusion against damage caused by flood. The [owners of City Blueprint] testified that although the defendants never told them that flood insurance was included in the commercial insurance package, they assumed that flood insurance was included. This blind assumption is not justifiable. An insured is responsible for reading his policy and is presumed to know its terms. Stephens v. Audubon Ins. Co., 27,658 (La.App. 2 Cir. 12/6/95), 665 So.2d 683. Here, the [owners of City Blueprint] admitted that they failed to read the policy and were unaware that it contained a flood exclusion. A simple review of the policy would have put them on notice that their company was not covered for damages arising from a flood. Thus, City Blueprint’s claim for negligent misrepresentation must also fail.
City Blueprint, 08-1093 at p. 8, 3 So.3d at 67. This court thus found the agent was entitled to summary judgment.
Mandina’s counters that City Blueprint, supra, is distinguishable in that Mandina’s agreed to procure the additional coverage that Powell recommended; and Powell specifically advised Mandina’s that in order to make certain it was covered for all damages that could be caused by Hurricane Katrina Mandina’s had |22to accept suggested changes to its coverages (which it accepted). Mandina’s argument is belied by the fact that the change in coverage that was recommended and made on the eve of the hurricane was only to increase the policy limits for BI/EE coverage, not to procure a new policy or a new type of BI/EE coverage. Mandina’s had the same type of BI/EE coverage for years before the hurricane. The BI/EE coverage was part of its windstorm/fire policy, which clearly excluded flood-related damages. Had Mr. Mandina examined the prior policies, he would have discovered that the BI/EE coverage was subject to a *113 clear exclusion for water damage, including flooding.
In sum, we conclude, as the defendants contend, that the jurisprudence supports a finding that “[a]n insured [like Mandina’s] who does not inquire about a particular coverage, who does not ask for the coverage, who does not ask for clarification about the coverage, and who never examines years of policies, has no right to assume that he has coverage and then sue his agent because his (the insured’s) assumption was incorrect.” Accordingly, we find the defendants are entitled to summary judgment as a matter of law.

CONCLUSION

For the foregoing reasons, we convert the defendants’ appeal to a writ, grant their writ, reverse the trial court’s judgment, and grant the defendants’ motion for summary judgment.
APPEAL CONVERTED TO A WRIT; WRIT GRANTED; AND JUDGMENT REVERSED

. When an agreement to procure insurance is present, “the duty of the broker is analogous to the duty of the agent.” Isidore Newman School v. J. Everett Eaves, Inc., 09-2161, p. 6 (La.7/6/10), 42 So.3d 352, 356 (citing Crayton v. Sentry Ins. Co., 612 So.2d 767, 771 (La.App. 1st Cir. 1993).)

. As discussed elsewhere in this opinion, Mandina’s contends, that this is the legal duty that Powell and Mr. O'Brien owed to it and breached. It further contends that this case is factually distinguishable from Newman, supra.

. The record reflects that, after the hurricane, Mandina's procured an excess flood policy that included BI/EE coverage.

. The plaintiffs in City Blueprint additionally argued that the agent was liable for negligent failure to advise whether City Blueprint needed to have flood insurance and the various flood insurance options. Citing Dobson v. Allstate Ins. Co., 2006 WL 2078423 (E.D.La.7/21/06) (unpub.), this court reasoned that the plaintiffs could not support this claim *112 because no such duty exists. In so finding, this court noted:
In the aftermath of Hurricanes Katrina and Rita, Louisiana federal district courts considered whether insurance agents have an affirmative duty to inform an insured about the availability of flood coverage in excess of the NFIP limits, and whether insurance agents have an independent duty to spontaneously identify their clients’ needs and advise them as to whether they are underinsured. The resounding conclusion is that such duties do not exist under Louisiana law.
City Blueprint, 08-1093 at p. 6, 3 So.3d at 66, n. 1 (citing Cameron Parish School Bd. v. State Farm Fire and Cas. Co., 560 F.Supp.2d 485, 489 (W.D.La.2008)).

. This court noted that the elements the plaintiff must prove are as follows: “(1) a legal duty to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation.” City Blueprint, 08-1093 at pp. 7-8, 3 So.3d at 66 (citing Abbott v. Equity Group, Inc., 2 F.3d 613 (5th Cir.1993)).