| | | |
|---|---|---|
| **STEPHEN LOWELL DRUKER** | * | **NO. 2022-CA-0261** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **MICHAEL JAMES BERTEL,** | * | |
| **FULL SAIL INVESTMENTS,** | | **FOURTH CIRCUIT** |
| **LLC, 1100 PATTERSON, LLC** | * | |
| **AND BERTEL** | | **STATE OF LOUISIANA** |
| **CONSTRUCTION, LLC** | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-02788, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Rachael D. Johnson)

Charles L. Stern, Jr.
THE STEEG LAW FIRM, L.L.C.
201 St. Charles Avenue
Suite 3201
New Orleans, LA 70170

Richard L. Traina
THE STEEG LAW FIRM, LLC
201 Saint Charles Avenue, Suite 3201
New Orleans, LA 70170

COUNSEL FOR PLAINTIFF/APPELLANT

Will C. Griffin
Galante & Bivalacqua, LLC
650 Poydras Street
Suite 2615
New Orleans, LA 70130

Anna Lellelid
LOUISIANA COMMUNITY LAW OFFICE
2415 Bienville Street
New Orleans, LA 70119

Salvador I. Bivalacqua
GALANTE & BIVALACQUA LLC
650 Poydras Street
Suite 2615
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**December 5, 2022**

Stephen Lowell Druker ("Mr. Druker") seeks review of the trial court's November 30, 2021 judgment granting Full Sail Investments, LLC's ("Full Sail"), motion for summary judgment. After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

On March 10, 2020, Mr. Druker and Full Sail executed a Louisiana Residential Agreement to Buy or Sell (the "Contract") preparatory to the sale of immovable property located at 1117 Patterson Road, New Orleans, Louisiana (the "Property"). The Contract concerns the sale of a new home upon the completion of its construction, with an original act of sale date of July 31, 2020, or earlier with mutual written consent of the parties. The Louisiana Residential Agreement to Buy or Sell contains an option for parties to include an addendum if the sale involves the construction of a new home. Mr. Druker and Full Sail elected to attach a New Construction Addendum to the Contract, along with several other

1

addenda, including an Addendum to Purchase Agreement, a Hurricane/Disaster

Addendum, and a Deposit Addendum.

The Addendum to Purchase Agreement contains the following provisions:

> Seller shall notify Buyer in writing when Certificate of Occupancy has been obtained, all construction is complete and permanent utilities are in place at the property. Buyer's Due Diligence and Inspection period shall commence at the time this notification is communicated to the Buyer from the Seller.

> Once the Due Diligence/Inspection period has commenced, Buyer and Seller must go to the act of sale for this property within 40 days from that date unless all parties agree to extend this deadline in writing, or unless the Buyer terminates the contract prior to the expiration of the Due Diligence/Inspection period.

> . . .

> Architectural drawings and associated documents are for reference only. The information contained within the attached documents is intended to depict design and basic construction detailing. The overall design of the building, including it's [sic] number of rooms, doors, windows and their general placement shall be considered the object of this contract by both the Seller and the Buyer. Other than these main elements, Seller reserves the right to deviate from construction documents at Seller's sole discretion without approval from Buyer.

> Such deviations shall not be considered a breach of contract on the part of the Seller. Buyer reserves the right to cancel this agreement at any time prior to the expiration of the Due Diligence/Inspection period and shall be entitled to a full refund of the Deposit.

Additionally, the New Construction Addendum states:

> Completion: Subject to any delays beyond the control of Builder, such as inclement weather or other adverse working conditions, fire or other casualty, riots, material delivery delays or on account of any acts of God, the home shall be completed on or before June 22, 2020 unless otherwise amended between parties. All changes

> to construction or allowances shall be in writing and
> signed by all parties.

Full Sail was not the builder of the new residence on the Property.  Full Sail contracted with Bertel Construction, LLC ("Bertel Construction") to complete construction of the home.[1]  Mr. Druker is not a party to the contract between Full Sail and Bertel Construction, and Mr. Druker did not enter into any other agreement with Bertel Construction.

It is undisputed that Bertel Construction experienced significant delays during the course of construction.  Pursuant to the terms of the Contract, the parties mutually agreed in writing to extend the act of sale date on two separate occasions.  First, they agreed to an act of sale date of November 30, 2020, and they later agreed to an act of sale date of March 30, 2021.  Mr. Druker offered to extend the act of sale date a third time, but Full Sail refused.  Construction of the new home was not completed by the March 30, 2021 act of sale date.

On March 22, 2021, Mr. Druker filed a petition for specific performance, damages, and injunctive relief against Full Sail, Bertel Construction, Michael Bertel ("Mr. Bertel"), and 1100 Patterson, LLC ("1100 Patterson"), (collectively, "Defendants").  In his petition, Mr. Druker sought specific performance from Defendants to complete construction of the new home.  He also sought a preliminary injunction to enjoin them from stopping construction on the new residence.  Mr. Druker alleged that he would suffer irreparable harm if the new home was not completed and sought damages, attorney's fees, and costs.

---

[1] There is some ambiguity in the record as to the exact corporate entity with which Full Sail contracted, as the New Construction Addendum of the Contract lists "Michael Bertel 110 Patterson, LLC," as the builder of the residence.

On May 12, 2021, the trial court heard and denied Mr. Druker's application for preliminary injunction. On June 17, 2021, Druker filed an amended petition, alleging fraud against Defendants.

On June 18, 2021, Full Sail filed a motion for summary judgment. Full Sail argued that the Contract was unenforceable because it contained a suspensive condition based solely on Mr. Druker's whim. Alternatively, Full Sail asserted that the Contract failed because both Full Sail and Mr. Druker were unable to perform their respective conditional obligations on the March 30, 2021 act of sale date. As to its own obligation, Full Sail alleged that it was unable, through no fault of its own, to convey merchantable title of the new residence on the Property because construction was incomplete on March 30, 2021. Concerning Mr. Druker's obligation, Full Sail further alleged that Mr. Druker was also unable to perform on the March 30, 2021 act of sale date because he could not obtain financing for the sale of the Property.

On September 22, 2021, Mr. Druker filed an opposition to Full Sail's motion for summary judgment. Mr. Druker subsequently filed a supplemental opposition on November 4, 2021, after hiring new counsel. In his supplemental opposition, Mr. Druker argued that summary judgment was inappropriate because it was premature. Alternatively, Mr. Druker asserted that Full Sail's motion for summary judgment failed as a matter of law because: (1) Full Sail's performance was not excused due to impossibility of performance or *force majeure*; (2) Full Sail's interpretation of the Contract concerning its lack of enforceability due to a suspensive condition based solely on Mr. Druker's whim was incorrect; and (3) Full Sail, likely motivated by a desire to sell the home for a higher price, breached the Contract when it refused to extend the act of sale date for a third time.

4

On November 12, 2021, Full sail filed a reply. Full Sail argued that summary judgment was proper and that it was entitled to judgment as a matter of law because Mr. Druker failed to meet his burden of proof that there were any genuine issues of material fact. Full Sail also contended that Mr. Druker mischaracterized Full Sail's arguments in discussing impossibility of performance and *force majeure*, as Full Sail never raised those legal arguments in its motion for summary judgment. Rather, Full Sail asserted that "the conditions in the [Contract] simply failed through no fault of either party." Next, Full Sail argued that the express language of the Contract allowed Mr. Druker to cancel the Contract at any time subject to his whim and that the Contract is therefore null and unenforceable. Moreover, Full Sail contended that Full Sail did not have a duty to extend the Contract a third time because the plain language of the Contract required mutual written consent for any changes to the act of sale date. Finally, Full Sail asserted that there was no need for parol evidence because the language of the Contract is unambiguous.

A hearing on the motion for summary judgment was held on November 19, 2021. The trial court concluded:

> Article 770 of the Louisiana Civil Code states in pertinent part, " . . . a suspensive condition that depends solely on the whim of the obligor makes the obligation null." The [Contract] contained the following language: "Buyer reserves the right to cancel this agreement at any time prior to the expiration of the due diligence/inspection period and shall be entitled to a full refund of the deposit."
>
> So the Louisiana Real Estate Commission provides a mandatory form for Louisiana residential agreements to buy or sell which contain a due diligence period to provide the buyer an opportunity to terminate the [Contract] if he or she chooses. The decision to terminate is presumed to be based on facts found during

5

the physical inspection of the property and can be exercised only during the limited inspection period. Now in this case, this agreement . . . altered the typical due diligence clause to allow Mr. Druker to cancel the agreement at any time prior to the expiration of the due diligence inspection period. The agreement provides for a due diligence . . . period of 14 days, and this period is identical to the due diligence period provided for in the LREC's mandatory form. However, the due diligence period does not begin until after [Full Sail] obtains a certificate of occupancy, which is explained in the Addendum to the Purchase Agreement, which means that Mr. Druker can cancel the agreement at any time before the 14-day due diligence period begins, and his cancellation does not have to depend on the home not passing inspection or unacceptable deviations. Under the agreement, Mr. Druker can cancel without any valid reason before the due diligence period.

As such, looking at all of this and considering the arguments of Mr. Traina, Mr. Druker can cancel without any valid reason before the due diligence period, and I find that the agreement is unenforceable because the suspensive condition based on the whim of Mr. Druker renders the agreement null in accordance with [Louisiana] Civil Code Article 770. So for the reasons I've outlined, the Motion for Summary Judgment is hereby granted.

## DISCUSSION

### Mr. Druker's Assignment of Error

On appeal, Mr. Druker's sole assignment of error is that the trial court erred in granting Full Sail's motion for summary judgment. Mr. Druker first argues that had the trial court properly followed Louisiana's rules of contract interpretation, it would have concluded that the parties intended that Mr. Druker would have only been able to cancel the Contract during the Due Diligence/Inspection period. Second, Mr. Druker contends that the Addendum to Purchase Agreement contains a resolutory condition and not a suspensive condition. Third, Mr. Druker asserts that even assuming *arguendo* that the Addendum to Purchase Agreement contains

6

a suspensive condition, Mr. Druker could only cancel the Contract in good faith and based on his will as opposed to his whim.

Full Sail argues that the trial court correctly granted its motion for summary judgment because the Contract between Full Sail and Mr. Druker failed as a matter of law. Full Sail further argues that the Contract "expired without penalty because the suspensive conditions therein failed." In the alternative, Full Sail contends that the Contract was unenforceable as written because Mr. Druker could cancel the Contract solely on his whim.

**Standard of Review**

"Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria applied by trial courts to determine whether summary judgment is appropriate." *Chatelain v. Fluor Daniel Const. Co.*, 14-1312, p. 3 (La. App. 4 Cir. 11/10/15), 179 So.3d 791, 793 (quoting *Mandina, Inc. v. O'Brien*, 13-0085, p. 9 (La. App. 4 Cir. 7/31/13), 156 So.3d 99, 104-05). The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides that, "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Generally, the burden of proof on a motion for summary judgment lies with the mover. La. C.C.P. art. 966(D)(1). If the moving party "will not bear the burden of proof on the issue that is before the court on the motion for summary judgment," however, then the mover need only "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* The burden of proof remains on the "adverse party to

produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.* If the non-moving party fails to do so, then summary judgment will be granted.

**Failure of the Contract**

A contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code. art. 1906. The Contract at issue is a bilateral commutative contract. "A contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other." La. Civ. Code art. 1908. "A contract is commutative when the performance of the obligation of each party is correlative to the performance of the other." La. Civ. Code art. 1911. Specifically, the Contract is an agreement preparatory to a sale. "An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon some performance of some obligation by either party, is a bilateral promise of sale or contract to sell." La. Civ. Code art. 2623. An agreement preparatory to a sale "gives either party the right to demand specific performance" and "must set forth the thing and the price, and meet the formal requirements of the sale it contemplates." *Id.*

The Contract at issue contains conditional obligations. "A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory." La. Civ. Code art. 1767. "A suspensive condition that depends solely on the whim of the obligor makes the

8

obligation null. A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith." La. Civ. Code art. 1770. "If the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed." La. Civ. Code art. 1773.

"Contracts have the effect of law and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La. Civ. Code art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "The interpretation of a contract's provisions is typically a matter of law that properly may be decided on motion for summary judgment." *Iteld v. Four Corners Const., L.P.*, 12-1504, p. 15 (La. App. 4 Cir. 6/5/13), 157 So.3d 702, 713 (citing *Hall v. Malone*, 12-0264, pp. 4-5 (La. App. 4 Cir. 11/7/12), 104 So.3d 593, 596. "The interpretation of a contract is normally a question of law." *Id.*, p. 16, 157 So.3d at 714 (citing *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 749-50.

The principal obligations of each party in the Contract at issue were conditioned upon uncertain events. More specifically, they both contained suspensive conditions. Full Sail's obligation to convey merchantable title was conditioned upon the completion of construction of the new home, and Mr. Druker's obligation to purchase the Property was conditioned upon his ability to

9

obtain financing. As to Mr. Druker's obligation, this Court has previously determined that an obligation to purchase immovable property conditioned upon a buyer's ability to obtain financing is a suspensive condition. *Rousset v. Smith*, 14-1409, p. 9 (La. App. 4 Cir. 9/23/15), 176 So.3d 632, 639; *Kansas v. Schaeffer*, 299 So.2d 474, 476 (La. App. 4th Cir. 1974); *Treadaway v. Piazza*, 156 So.2d 328, 330 (La. App. 4th Cir. 1963) ("It is well-settled that an agreement to purchase an immovable, conditioned upon purchaser's ability to obtain a stipulated loan to finance the purchase, is a contract subject to a suspensive condition."). Similarly, Full Sail's obligation to sell the Property was conditioned upon the suspensive condition of the completion of construction of the new home in advance of the March 30, 2021 act of sale date. It is undisputed that construction of the new home on the Property was incomplete on the March 30, 2021 act of sale date. Accordingly, the suspensive condition failed. Even assuming *arguendo*, as the trial court assumed, that Mr. Druker was able to obtain financing to purchase the Property, Full Sail could not fulfill its obligation to sell a newly-constructed home on the March 30, 2021 act of sale date because the suspensive condition that construction would be finished failed.

This Court has held that when a party to a purchase agreement cannot fulfill an obligation due to the failure of a suspensive condition by no fault of the obligated party, the purchase agreement is null. *Bacon v. Ford*, 522 So.2d 1232, 1234-35 (La. App. 4th Cir. 1988) ("When a purchaser, through no fault of his own, is unable to obtain the loan upon which the agreement is conditioned, the obligations imposed by the agreement are not binding upon the parties; the agreement is null and the parties are released from their obligations to perform."); *Rousset*, 14-1409, p. 29, 176 So.3d at 649. ("Given the trial judge's finding that the

[buyers] were unable, through no fault of their own, to secure financing by the date set for the act of sale, her conclusion that the purchase agreement was thus rendered null should not be controversial. It is . . . the only legal conclusion."). Full Sail repeatedly asserts that the construction delays were through no fault of its own. Mr. Druker, on the other hand, contends that "[f]act issues exist as to the reasons for the delays and whether the delays could have been avoided." Even assuming *arguendo* that some of the delays could have been avoided, there is no evidence in the record that Full Sail, which was not the builder of the new home, was at fault for Bertel Construction's failure to complete construction in advance of the March 30, 2021 act of sale date. Accordingly, we find that the trial court correctly concluded that the Contract failed and is null.

**Enforceability of the Contract**

Mr. Druker contends that the trial court erred in concluding that he could cancel the Contract at any time prior to the expiration of the Due Diligence/Inspection period and that the "unambiguous language of the Contract and its addenda shows that the right only existed between the commencement and the expiration" of the Due Diligence/Inspection period." Based on this interpretation, Mr. Druker further argues that his right to cancel the Contract is a resolutory condition and that, even if it were a suspensive condition, Mr. Druker could only cancel the Contract based on his will and not on his whim. We disagree. The plain language of the Addendum to Purchase Agreement provides that Mr. Druker "reserves the right to cancel this agreement at any time prior to the expiration of the date of the Due Diligence/Inspection period and shall be entitled to a full refund of the deposit." Accordingly, we find no support for Mr. Druker's

assertion that he could only cancel the Contract within the Due Diligence/Inspection period.

We agree with the trial court that the Contract was "unenforceable because the suspensive condition based on the whim of Mr. Druker renders the agreement null." In *McCall v. Focus Worldwide Television Network, Inc.*, this Court concluded that an employment contract with modified terms to allow an employee to continue her work at a company for as long as she wanted contained a suspensive condition based solely on her whim that rendered the agreement null pursuant to La. Civ. Code art. 1770. 12-0742, pp. 19-20 (La. App. 4 Cir. 6/12/13), 119 So.3d 876, 887. Similarly, the Contract at issue modified the standard terms of the Louisiana Residential Agreement to Buy or Sell, which provides a 14-day Due Diligence/Inspection period to allow the Buyer to cancel the agreement based on facts ascertained during that 14-day period, such as construction defects or a failed inspection, to allow Mr. Druker to cancel "at any time," even prior to the commencement of the Due Diligence/Inspection period. This effectively turned Mr. Druker's ability to cancel from a permissible suspensive condition based on his informed decision making, or his will, arising from facts discovered during the Due Diligence/Inspection period, into a suspensive condition dependent solely on his whim because the express language of the Addendum to Purchase Agreement allows him to cancel based on his unbridled discretion even in advance of the start of the Due Diligence/Inspection Period. Accordingly, we find that the trial court correctly determined that the Contract permits Mr. Druker to cancel "without any valid reason" prior to the commencement of the Due Diligence/Inspection period and is therefore a suspensive condition based solely on his whim that renders the Contract null.

12

**DECREE**

For the reasons stated above, we affirm the trial court's ruling finding that there are no genuine issues of material fact regarding the validity and enforceability of the Contract and that Full Sail is entitled to judgment as a matter of law.

**AFFIRMED**